UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| GENERAL AUTO PARTS COMPANY, an Idaho Corporation, | ) ) ) | Case No. CIV 04-379-S-EJL |
| Plaintiff, | ) ) | MEMORANDUM ORDER |
| vs. | ) ) | |
| GENUINE PARTS COMPANY, a Georgia Corporation, and DYNAPARTS, LLC, Georgia Limited Liability Company, | ) ) ) ) | |
| Defendants. | ) ) | |

Pending before the Court in the above-entitled matter are Plaintiff's motion for partial summary judgment, each of the Defendants' motions for summary judgment, and several related motions to strike. The parties have also filed numerous motions in limine. The parties have filed their responsive briefing and the matters are now ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions shall be decided on the record before this Court without oral argument.

MEMORANDUM ORDER - Page - 1

**Factual and Procedural Background**

Plaintiff, General Auto Parts Company ("General"), is an independent owner of a NAPA Auto Parts store in Boise, Idaho. General buys its retail from Defendant Genuine Parts Company ("GPC") who supplies NAPA-brand automotive products across the United States through its fifty-eight distribution centers located throughout the United States. General utilizes GPC's distribution center in Spokane, Washington as does Defendant Dyna Parts, LLC ("Dyna Parts"). Dyna Parts owns four NAPA Auto Parts stores in Boise, Idaho.[1] General has filed the instant action seeking injunctive and monetary relief based on their claims alleging violations of the Robinson-Patman Act ("RPA"), 15 U.S.C. § 13 *et seq.*, and Idaho's Anti-Price Discrimination Act, Idaho Code § 48-201 *et seq.*; arguing GPC sells the same auto parts to Dyna Parts at prices lower than they sell to General.[2] The price differential, General alleges, is the result of GPC's use of, and Dyna Parts' participation in, marketing strategies including volume discounts, rebates or credits based on quantity and timing of purchases, preferential purchase prices, and other promotions. (Dkt. No. 1). In addition, General asserts that GPC employs, and Dyna Parts uses, pricing controls not equally applied or available to all buyers which

---

[1] General alleges that Dyna Parts' management has included GPC executives since at least the year 2000. Dyna Parts disputes this allegation, asserting that as of 2005 Dyna Parts is separate from GPC.

[2] The Claims raised in the complaint are as follows:
1) Count One: Discriminatory Pricing as against both Defendants in violation of Idaho's Anti-Price Discrimination Act [Idaho Code § 48-201 *et seq.*] and the Clayton Act [15 U.S.C. § 12 *et seq.*] as modified by the Robinson-Patman Act [15 U.S.C. § 13 *et seq.*].
2) Count Two: Tortuous Interference with Prospective Economic Advantage as against both Defendants.
3) Count Three: Breach of Contract as against Defendant GPC.
4) Count Four: Breach of the Covenant of Good Faith and Fair Dealing as against Defendant GPC.

MEMORANDUM ORDER - Page - 2

discriminates against General and interferes with General's ability to compete with Dyna Parts resulting in lost profits, sales, and customers.

GPC's distribution centers sell NAPA products to GPC's own company-owned stores and independent store owners like Dyna Parts and General who are commonly referred to as "jobbers." GPC offers two discount programs which both General and Dyna Parts have used: 1) the "factory-direct" or "direct ship" program and 2) the "master-installer" program. Under the factory-direct program, jobbers can place orders through the distribution center for shipment of products directly from the manufacturer; bypassing the GPC distribution center. The discount received is graduated depending on the volume purchased and on the parts purchased; with each manufacturer negotiating its own discount. The master-installer program allows jobbers to sign up for rebates on all purchases from GPC for resale to particular master installer customers. The program imposes minimum annual purchase requirements. GPC counters that these programs are equally available to all jobbers and any resulting higher price paid by General is a function of General's own decision to not maximize its use of these discount programs. Dyna Parts joins in GPC's arguments and further argues that it did not knowingly induce or receive discriminatory pricing from GPC.

## Standard of Law

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[3]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

---

[3] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

MEMORANDUM ORDER - Page - 4

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

**Discussion**

I.   General & GPC's Motions for Summary Judgment / Injunction:

   A.   RPA Claim:

General's motion seeks judgment that, as a matter of law, GPC's volume discount pricing and Dyna Parts' receipt of the discounted pricing violates the RPA and Idaho's Anti-Price Discrimination Act, no affirmative defenses have been shown, and permanent injunctive relief preventing GPC from selling and Dyna Parts from buying parts at a volume discount. GPC has filed its own motion for summary judgment arguing that General failed to prove the elements of the prima facie case and challenges General's expert.

The RPA, 15 U.S.C. § 13(a), makes it unlawful for any person engaged in commerce to directly or indirectly discriminate in price between different purchasers of commodities of like

grade and quality.[4]  In order to establish a violation of the RPA, a plaintiff has the burden of proving: (1) sales were made in interstate commerce; (2) the product sold was of the same grade and quality as that sold to other buyers; (3) the seller discriminated in price as between the two buyers; and (4) that the discrimination had a prohibited effect on competition. 15 U.S.C. § 13(a). Moreover, to recover damages, the plaintiff has the burden of proving the extent of his actual injuries.  Texaco Inc. v. Hasbrouck, 496 U.S. 543, 556 (1990) (citation omitted).  There is no dispute that the sales at issue in this matter were made in interstate commerce.  The remaining elements are disputed.

      I)      <u>Grade and Quality of the Product</u>

General points to 10,000 transactions which it has identified as instances where GPC charged General more than it charged Dyna Parts for the purchase of the identical part.  On this point the Court finds there is a dispute as to the material facts precluding summary judgment. The parties clearly disagree as to the price calculation to be employed in determining whether there is a difference in price charged by GPC.

---

[4] 15 U.S.C. § 13(a) provides, in part:
> It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them....

       ii)       <u>Discrimination</u> - Functionally Available

As to the third element, GPC argues that General has failed to identify any discriminatory pricing by GPC. General argues the discriminatory nature of GPC's volume discounts are evidenced by the fact that an individual jobber purchasing in smaller quantities will always be charged more for a particular part when compared to jobbers who are able to purchase in larger quantities in light of the graduated scale upon which the volume discounts are based. GPC counters that General declined to avail itself of GPC's discount programs which were made "functionally available" on an equal basis to both General and Dyna Parts.

The theory behind the functional availability doctrine is that where a discount program is made available to competing purchasers, the fact that one purchaser utilizes the program and the other does not, fails to give rise to a RPA claim because any price disparity is not a result of discriminatory pricing but, instead, the buyer's use of the discount programs. Here, GPC asserts its direct ship discounts which Dyna Parts has taken advantage of, are also available to General but General has chosen not to utilize the program. General counters that, as a matter of law, "functional availability" is not a valid defense and that volume based discounts are *per se* illegal unless they are tied to actual cost savings and that, if it is a valid defense, the discounts were not functionally available to General and GPC's arguments are only speculative as to what General could have done to use the discounts more in its business or to the extent Dyna Parts is able to use the discounts.

The parties dispute whether or not this is a viable defense. The functionally available doctrine is a theory of defense which goes to challenge the question of whether there has been

MEMORANDUM ORDER - Page - 7

discriminatory pricing. See Morton Salt, 334 U.S. at 42. The seller's argument is that where discount programs are available to all buyers there is no discrimination if a buyer fails to utilize the discount programs. General's argument that volume discounts are *per se* illegal unless tied to actual cost savings goes to a different question; that being whether the pricing adversely impacted competition, the forth element of the prima facie case, and the statutory cost savings affirmative defense.

The functional available doctrine is a proper argument challenging the discrimination element of the plaintiff's prima facie case for an RPA claim. In Tri-Valley Packing Ass'n v. Federal Trade Commission, 329 F.2d 694, 704 (9th Cir. 1964) the Ninth Circuit concluded that "[w]here a purchaser does not take advantage of a lower price or a discount which is functionally available on an equal basis, it has been held that either no price discrimination has occurred, or the discrimination is not the proximate cause of the injury." Shreve Equipment, Inc. v. Clay Equipment Corp., 650 F.2d 101, 105-06 (6th Cir. 1981) (citing cases). Other circuits have also recognized the argument. In Bouldis v. United States Suzuki Motor Corp., 711 F.2d 1319, 1326-27 (6th Cir. 1983) the court stated:

> The practice of conditioning price concessions and allowances upon the customer's purchase of a specific quantity of goods will not give rise to a Robinson-Patman violation if the concessions are available equally and functionally to all customers. See Federal Trade Comm. v. Morton Salt Co., 334 U.S. 37, 42 (1948); Shreve Equipment, Inc. v. Clay Equipment Corp., 650 F.2d 101, 105 (6th Cir. 1981) [citations omitted]. Further, a claim of price discrimination will not lie if the buyer failed to take advantage of a price concession which was realistically and functionally available. See Shreve Equipment, Inc., *supra*, 650 F.2d at 105. The legislative history reveals that the aim of the Act is to prevent a large buyer from gaining discriminatory preferences over the small buyer solely because of the large buyer's greater purchasing power.

> See Federal Trade Comm. v. Henry Broch & Co., 363 U.S. 166, 168-69 (1960); Morton Salt Co., *supra*, 334 U.S. at 43.

A district court in this Circuit has also recognized that a claim for price discrimination does not lie where "the lower prices given to another were also available to plaintiff." Cain v. Chevron U.S.A., Inc., 757 F.Supp. 1120, 1123-24 (D.Or. 1991) (citing Bouldis v. U.S. Suzuki Motor Corp., 711 F.2d 1319, 1326 (6th Cir. 1983)). In Cain the plaintiff admitted that he chose not to take advantage of the availability of lower prices, because it was more profitable for him to pay a higher price for the product and retain his high profit margin. Id.

In addressing the discrimination element in this case, it is undisputed that General participates in both the direct purchase discount and the master installer account program. Thus, the question is not whether the discount programs are available to General, but whether the programs discriminate. General maintains that while it utilizes the discount programs when it can, it simply is unable to obtain the level of discounts as Dyna Parts because it is a single store requiring less volume. GPC asserts that by making a few simple business changes that General can take greater advantage of the discount programs as evidenced by the fact that several other single-store owners have in other markets. Even assuming the facts are as General argues, the Court concludes that there are no allegations that the two discount programs offered by GPC discriminate.

General's argument that it is unable to take advantage of the discount to the extent that Dyna Parts has goes not to the discrimination element but to the next question of whether the discriminatory pricing adversely impacts competition. As GPC argues, General must first

demonstrate the pricing in the programs is discriminatory in order for the competition inquiry to be relevant. General has failed to do so in this case. General argues that because it is charged a price higher than Dyna Parts there is discriminatory pricing. GPC disputes the price calculations used by General, arguing it has not shown there is a difference in the net price, and argues the programs are available to all buyers equally thereby evidencing a lack of discrimination. Assuming for purposes of this motion that, as General argues, there is a difference in price charged to Dyna Parts and General, that fact alone does not equate to discrimination particularly where the price difference may arise from the fact that Dyna Parts takes advantage of the discount pricing programs to a greater degree than General. General's contention that it is unable to employ the discount programs to the extent that Dyna Parts is because it is a single-store ownership also does not establish price discrimination in light of the fact that discount programs are equally available to all of its buyers, as evidence by the fact that General uses the programs. General's argument may evidence an impact on competition but not discrimination.

Because, even assuming the facts are as General alleges, the discount programs do not amount to price discrimination, General is unable to carry its burden of proof at trial and, therefore, summary judgment is appropriate in favor of Defendants on count one of the complaint.

  iii) <u>Impact on Competition</u> - Functional Discounts

On the final element, GPC argues its pricing has no impact on competition because General has failed to show any difference in prices charged or discrimination. General maintains that the pricing adversely affected competition evidenced by the fact that Dyna Parts was able to

purchase the parts from GPC for less money and thereby charge less to its consumers. This resulted in General losing profits and customers because it had to pay more for the parts and, therefore, was unable to lower its prices as Dyna Parts had done. GPC contends that General has not alleged there was a contemporaneous sale of like goods at different prices because General has failed to compare net prices, after all discounts, rebates and other factors affecting price have been considered in order to determine whether there is a price differential. GPC challenges General's expert who analyzed the "Super File" which is a data base containing records of sales of products to General and Dyna Parts which does not reflect all the rebates and, therefore, the final net price of the parts sold.

Volume discounts are not *per se* illegal. Functional discounts may be legitimate business practices under the RPA where such discounts do not cause harm to competition. Texaco Inc. v. Hasbrouck, 496 U.S. 543, 571 (1990). General argues GPC has not identified any actual cost savings linked to the volume discounts nor quantified any cost savings and, therefore, GPC has not proven the affirmative defense. Where raised by a seller/distributor, however, it is not an affirmative defense as General argues but, is instead an attack on a plaintiff's prima facie case as to causation and whether the plaintiff has evidence demonstrating that the price discrimination had an adverse effect on competition. As described by the Supreme Court:

> [M]ost functional discounts will be legitimate discounts which do not cause harm to competition. At the least, a functional discount that constitutes a reasonable reimbursement for the purchasers' actual marketing functions will not violate the [RPA]. When a functional discount is legitimate, the inference of injury to competition recognized in the Morton Salt case will simply not arise. Yet it is also true that not every functional discount is entitled to a judgment of legitimacy, and that it will sometimes be possible to produce evidence showing that a particular functional discount caused a price discrimination of the sort the [RPA]

MEMORANDUM ORDER - Page - 11

>prohibits.  When such anticompetitive effects are proved...they are covered by the [RPA].

Id.  Thus, the question in this case is whether GPC's price discounts caused injury to competition made illegal by the RPA.  This inquiry turns on the facts of the case and whether the discount constitutes a reasonable reimbursement for actual marketing functions.

GPC maintains that its price discounts are tied directly to the cost savings they incur when buyers purchase at larger volumes or directly from distributors thereby negating the need for GPC to incur the costs of storing and shipping the products.  General contends that the discriminatory prices in this case injures competition because General is forced to pay more for the same parts while having to compete with Dyna Parts for the same customers, Dyna Parts has consolidated its purchasing power by ordering for all of its four stores through one store, and General argues it has lost customers to Dyna Parts as a result of the lower prices Dyna Parts is able to charge.[5]

The RPA "does not require that the discriminations must in fact have harmed competition, but only that there is a reasonable possibility that they 'may' have such effect" so as to "reach those which would probably have the defined effect on competition."  Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 46-47 (1948) (citation omitted).  Here, General argues the difference in price charged by GPC adversely impacted competition because the two jobbers are in direct competition in the Boise market.  The Court agrees that, assuming the facts

---

[5] In its response to General's motion for summary judgment/preliminary injunction, Dyna Parts disputes that it purchases parts for all four stores through one store and the fact that General has lost customers.  (Dkt. No. 93).

MEMORANDUM ORDER - Page - 12

are as General contends, the effect of such price differentials might substantially lessen, injure, or destroy competition as contemplated by the RPA.  See Morton Salt, 334 U.S. at 46-47.  Thus, there are questions of fact on this element which preclude summary judgement in favor of either party.  However, because the Court has determined above that the discrimination element is lacking, GPC's motion for summary judgment is proper.

      iv)    Injury & Damages

In addition, GPC contends that General has not offered evidence of injury or damages; challenging General's expert.  General maintains it has provided sufficient evidence from which a jury could infer damages.  There is a great deal of dispute between the parties as to what the final purchase price should include in this case and whether damages have been shown.  On this point there are clearly disputed facts.

      B.    Contract Claims:

General's contract claim asserts that it has an "agreement" with GPC to buy and sell auto parts at published prices and provide a wide array of services, including assisting jobbers with growing their business.  General argues GPC breached this agreement by not selling at the agreed prices and impeding General's growth when it charged General more for parts and by not offering General the option to join in a joint venture.  In addition, General argues GPC has failed to treat General fairly thereby breaching the implied covenant of good faith and fair dealing. GPC argues summary judgment is proper on General's breach of contract and breach of the implied covenant of good faith claims because the claims were resolved in the prior state court

litigation between these parties and because General has failed to provide the existence of a contract or any breach of a contract.

Having reviewed the record in this case and interpreting the facts in the light most favorable to General, the Court concludes that summary judgment in favor of the Defendants on these claims is proper. General has not identified any contract or agreement that exists between the parties which encompasses the broad agreement alleged in its complaint and briefing. General has not alleged the existence of any oral contract. The only contract terms that possibly exist between GPC and General are contained on the purchase invoices provided by GPC to General with each purchase order made by General. There is simply no evidence that the contract terms alleged by General exist. Therefore, summary judgment in favor of GPC is proper.

C. Tort Claims:

General has conceded that summary judgment is proper on its Tort claims. Accordingly, the Court grants summary judgment in favor of GPC on the tort claim.

II. Dyna Parts Motion for Summary Judgment:

Dyna Parts has also filed a motion for summary judgment on count one for violation of the RPA and Count two for Tortuous interference with prospective economic advantage. As to count one, Dyna Parts joins in GPC's arguments regarding General's failure to prove the prima facie case for an RPA claim. In addition, Dyna Parts argues the claim against it must fail because there is no evidence that Dyna Parts knowingly induced or knowingly received discriminatory pricing. General asserts that Dyna Parts either knew of the discriminating

volume discounts or induced such discounts as evidenced by the fact that Dyna Parts consolidated its purchasing power in order to achieve the highest level of discount knowing General would be unable to do the same. The Court has determined above that General has failed to point to evidence of price discrimination and therefore cannot make out a prima facie case on count one of the complaint. On the same basis, summary judgment as to the RPA claim against Dyna Parts is also granted.

As to the tort claim, General alleges it has lost customers to Dyna Parts because Dyna Parts has been able to consolidate its purchasing power and take advantage of larger discounts thereby allowing it to sell the same parts at lower prices. In addition, General alleges that Dyna Parts was seeking to expand its Boise market by acquiring General.

The prima facie case for Tortuous interference in Idaho are: (1) existence of a valid economic expectancy; (2) the interferer's knowledge of the expectancy, (3) intentional interference inducing termination of the expectancy, (4) the interference was wrongful beyond the interference itself; and (5) resulting damage to the plaintiff whose expectancy has been disrupted. See Highland Enterprises, Inc. v. Barker, 986 P.2d 996, 1004 (Idaho 1999) (citation omitted). General claims that the wrongful act engaged in by Dyna Parts is its "intentional use of illegal volume discounts to buy for less and sell to the NAPA Auto Parts customer-base for less." (Dkt. No. 94, p. 17). These actions are wrongful, General alleges, because they are in violation of the RPA. As the Court determined above, General's RPA claim does not survive the Defendants' motions for summary judgment. Because General's tort claim against Dyna Parts is

based upon the same facts, the Court will grant summary judgment in favor of Dyna Parts as to General's tort claim.

## ORDER

Based on the foregoing, the Court HEREBY ORDERS as follows:

1) Plaintiff's Motions for Partial Summary Judgment (Dkt. Nos. 68, 89) are **DENIED**.

2) Defendant Dyna Parts's Motion for Summary Judgment (Dkt. No. 62) is **GRANTED**.

3) Defendant Genuine Parts Company's Motion for Summary Judgment (Dkt. No. 66) is **GRANTED**.

4) Defendant Genuine Parts Company's Motions to Strike (Dkt. No. 104, 105) and Plaintiff's Motions to Strike (Dkt. No. 96, 97, 107, 108, 109, 111, 112, 113, 114, 115, 116) are **MOOT**.

5) Defendant Genuine Parts Company's Motions to Exclude (Dkt. No. 90, 99) are **MOOT**.

6) Defendant Genuine Parts Company's Motions in Limine (131, 132, 133, 134, 154 (joinder)) are **MOOT.**

7) Defendant Dyna Parts' Motions in Limine (Dkt. Nos. 137, 138, 139, 140(joinder)) are **MOOT**.

8) Plaintiff's Motions in Limine (Dkt. Nos. 144, 145, 146, 147, 148, 149, 150, 151, 152, 153) are **MOOT.**

DATED: **March 5, 2007**

Honorable Edward J. Lodge
U. S. District Judge